# CHARLESTON.

## LAIDLEY v. KANAWHA COUNTY COURT.

Submitted January 15, 1898—Decided April 2, 1898.

1. APPEAL—*Certificate of Evidence—Conflicting Evidence.*

   Under section 9, chapter 131, Code, when exception is taken to the action or opinion of the court upon a question involving evidence upon a motion for a new trial or otherwise, all the evidence, whether conflicting or not, must be certified, and this Court must consider all such evidence on both sides, though conflicting, not rejecting any. (p. 572).

2. APPEAL—*Motion to Set Aside Verdict—Conflicting Evidence.*

   And by implication the same rule applies under said statute to the trial court on the hearing of a motion to set aside the verdict of a jury on the ground that the same is contrary to the evidence. (p. 573).

3. SETTING ASIDE VERDICT—*Conflicting Evidence.*

   If, upon such evidence, the finding of the jury plainly appears to be contrary to the evidence, or without sufficient evidence, or plainly against the decided and clear preponderance of evidence, it ought to be set aside, even though the evidence be conflicting. (p. 573).

Error to Circuit Court, Kanawha County.

Action by W. S. Laidley against the county court of Kanawha county. Verdict for plaintiff for a less amount than his claim. His motion for a new trial being overruled, and judgment entered on the verdict, plaintiff brings error.

*Reversed.*

W. S. LAIDLEY and T. S. CLARK, for plaintiff in error.

S. C. BURDETT, for defendant in error.

McWhorter, Judge:

W. S. Laidley brought his action of *assumpsit* in the cir-
cuit court of Kanawha county against the county court of
said county, based on the following account:

Jan., 1896.   For services as attorney in the supreme court of
    appeals of West Virginia, in the case of Charleston
    and Southside Bridge Company against the County Court
    of Kanawha County *et als*................................... $1,000
Sept., 1896.   For services in said court of appeals in case of
    Rand & Goshorn, Admrs. v. County Court of Kanawha
    County .....................................................    100
                                                $1,100
Credit by cash on the bridge case.............................    500

    Bal. due.....................................................  $  600

At the February rules, 1897, he filed in the clerk's office
of said circuit court his declaration, with his affidavit, un-
der the statute, claiming said balance of six hundred dol-
lars as still due him.   On the 24th day of March, 1897, the
defendant demurred to the declaration, which demurrer
being overruled, the defendant filed a counter affidavit,
and entered its plea of *non assumpsit* and further pleas of
payment and set-off.   Issues being joined on all of said
pleas, the same were, on the same day, tried before a jury,
which rendered a verdict in favor of plaintiff, and assessed
his damages at one hundred dollars, when the plaintiff
moved the court to set aside the verdict, and grant him a new
trial, of which motion the court took time to consider.   On
the 20th day of April, 1897, the motion to set aside the ver-
dict and grant a new trial, being argued by counsel and
considered by the court, was overruled, and judgment was
entered upon said verdict, to which ruling and judgment
of the court the plaintiff excepted, and took his bill of ex-
ceptions, which certified all the evidence, and was signed
and saved to him.   The record does not disclose the
grounds upon which the motion was made to set aside the
verdict and grant the new trial, but appellant's assignment
of error is: "That the verdict rendered was too small,
and the court should have sustained his motion to set
aside the said verdict and give the plaintiff a new trial; that
the weight of evidence was plainly in favor of the whole of

plaintiff's claim, and the jury disregarded the same; that the circuit court, in considering the plaintiff's motion for a new trial, disregarded the decisions of this Court, and refused to consider all the evidence adduced on the trial, but treated the finding of the jury as omnipotent, although recognized as against the weight of evidence, and thereby failed to regard the instructions of this Court." And it is argued that the verdict is contrary to the evidence. Plaintiff testifies that he was employed by defendant as attorney to obtain from this Court a writ of error to the judgment of Kanawha circuit court in the case of Charleston & Southside Bridge Company against the county court of Kanawha county and others; that he procured a copy of the record in said cause, prepared the petition for the writ, and applied for and afterwards obtained it at Charles Town, Jefferson county, and did all that the attorney was required to do to have the same placed on the docket of this Court for hearing at the January term, 1896; that he afterwards prepared three several briefs of argument in said cause, and filed same in said Court, and did all that was required to be done to secure the submission of said cause for decision; that the cause was submitted, and was decided March 4, 1896, reversing the judgment complained of, and sustaining the county court; that defendant paid his expenses in going to Charles Town to obtain the writ of error, and paid all bills made by plaintiff in printing all briefs prepared by him, plaintiff attending to the printing thereof; that plaintiff, after the decision of the case by this Court, consulted some of the attorneys accustomed to practice in the Court of Appeals, and ascertained what would be a reasonable compensation in said cause in the Court of Appeals, and then made his account; that it was reasonable compensation for the services performed; that he received no assistance from any one else; that A. C. Blair was prosecuting attorney for the county, but plaintiff prepared the brief signed by Blair; that plaintiff was also employed by defendant in the case of Rand & Goshorn against the county court in the Court of Appeals; that he prepared the briefs in that case, and discussed the case in the Court at Charles Town; that he presented his account in the case for one hundred dollars, which was a rea-

sonable fee, and which was disallowed; that defendant had paid him on the Bridge Company fee five hundred dollars, but that it was not accepted in full.    On cross-examination plaintiff states that he obtained the writ of error in the Bridge Company case in September, 1895; that he resigned as commissioner December 4, 1895; that with the petition for writ of error he prepared and presented a brief to the court; that A. C. Blair went with him to Charles Town, and was of counsel with him in both cases, and that S. C. Burdett was also counsel for the county court in the Rand & Goshorn case; that while he was a member of the county court, in September, 1895, he obtained the writ of error, and continued as such until December 4, 1895; that part of the services for which compensation is sought in this action was obtaining the writ of error, and preparing the petition and brief filed therewith; that the part of the services done while a member of the county court was a very small part of the services rendered or work done in said case.

The deposition of E. L. Buttrick was read on behalf of the plaintiff to the effect that he had knowledge of the matters involved in the case, and of the decision of the Court of Appeals made therein, the subject being one in which he was interested and examined; that the fee of one thousand dollars charged by plaintiff for his services in that case was, in witness' opinion, reasonable, and not too much.    George S. Couch stated that, after hearing the case stated, and from his knowledge of the case, having been called as a witness in the case before the county court, and having had some experience in regard to the assessment of the Point Pleasant bridge, and from his mode of charging, and from the difficulties of the case, the amount involved, and the benefits accruing therefrom, the charge of one thousand dollars for plaintiff's services was a reasonable one, and not too much.    He further said that he never knew of such fee being paid by the county court, or received by any attorney, in any case of erroneous assessment, except as above stated, and from the testimony he had heard in the case, and the inspection of the record and brief, he knew nothing more of the case; that he knew of no such case as the Bridge Company case in the Su-

preme Court of Appeals, and of the matters involved in this case, and consequently knew of no charges being made by attorneys in cases like this; that in the case of which he spoke he made no specific charge, because he was employed on a salary, and it did not involve the same question.    J. B. C. Drew testified that he knew of the case in the Court of Appeals, and of the difficulties thereof, and the matters discussed; that he heard the plaintiff discussing them when at work on his brief, knew what was involved, amount in controversy, and the benefits which accrued from the decision made, and that the charge of one thousand dollars for services was reasonable, and not too much; that he prepared the order for the county court allowing one thousand dollars and the court erased the one thousand dollars, and inserted five hundred dollars instead.    He further said that plaintiff in the case was confronted with two decisions of the Court of Appeals of West Virginia, which were adverse to the position taken by said Laidley, and he was compelled to secure the reversal of said cases before he could hope to succeed.    J. W. Kennedy, a practicing attorney, states that he was acquainted with the matters involved in the Bridge Company case, the amount involved, and the benefits accrued from the decision made therein, and that the charge of one thousand dollars for the plaintiff's services in that case was a reasonable one, and not too much; that he had made up his mind from his knowledge of the case, and from what had been told him of the case on the stand, and taking the whole together, the difficulties involved in the case, the amounts involved, the benefits derived, etc., he was satisfied that the plaintiff's charge was not unreasonable. S. S. Green, practicing attorney, states that, after being informed of the Bridge Company case, lately pending in the Court of Appeals, and of the questions involved and discussed therein, and the amount involved, and the benefits to be derived from the decision made therein, that the charge of one thousand dollars for plaintiff's fee in said case was a reasonable one; that he had no knowledge of the case except from the information he had received since he had been on the witness stand; that he had seen the record of the case, and the briefs filed in the

case, and that he was satisfied that the fee charged by the plaintiff was reasonable.

It is admitted that the record in said Bridge Company case and all the briefs filed in said case in the Appellate Court were used as evidence before the jury in this case, and may be used here; that the bridge company has applied for and obtained a writ of error to the decision of the Supreme Court of Appeals of this State from the United States Supreme Court, and that the plaintiff has been retained by the defendant in said cause in the Supreme Court of the United States, but that plaintiff's services in said court are not included in the claim sued upon herein. It was also admitted that plaintiff's charge in the Rand & Goshorn case was reasonable, and that A. C. Blair was the prosecuting attorney for Kanawha county until January 1, 1897.

For the defendant, J. S. McDonald, president of the Kanawha county court, was sworn. States that plaintiff was employed by defendant in the Bridge Company case in the Supreme Court of Appeals; that he, as attorney for said court, performed the services; that he had presented to said county court a report thereof; that the county court had taken the matter into consideration, and that he thought that five hundred dollars was a pretty liberal fee, and they had paid that, and he thought that was enough, and therefore declined to allow any more. E. A. Woodall, said he was a commissioner of the county court in December, 1895; that he knew plaintiff was representing the court in said Bridge Company case in the Court of Appeals, and knew the decision therein, and that plaintiff had reported to the county court, with the request that the court allow him a liberal fee for his services; that he knew nothing of the amount charged by attorneys for their services, and he thought best to let the circuit court decide the matter; that when the five hundred dollars was allowed, Mr. Laidley would not accept it in full for his claim, and it was agreed that the acceptance of the five hundred dollars was not to prejudice his claim for the balance claimed. S. D. Littlepage states that he practices in the Court of Appeals; that he knew nothing of the Bridge Company case against the county court except what he had

heard while on the witness stand; that, judging from what had been explained to him on the stand as to what services Mr. Laidley had performed in the suit, and from the briefs filed and shown to witness and examined by him, he considered that two hundred and fifty dollars, not including costs of printing the briefs, railroad travel, and other necessary expenses, would be a reasonable fee; that witness thought one hundred and fifty dollars would be a fair fee in an ordinary case in the Supreme Court of Appeals, that being about what he would charge in an ordinary case; that witness did not know what facts, law points, or amount was involved in the Bridge Company case, or the questions discussed therein. The defendant read in evidence the report of W. S. Laidley to the county court, dated February, 1896, and recorded in the records of the county court, and also the order of the county court allowing the sum of five hundred dollars, which report is made part of the record, but does not appear in it.

Was the court warranted in refusing to set aside the verdict as contrary to the evidence? The evidence is conflicting, and largely of the character of expert testimony; t··hatchafnrad oacter, too, which entitled the opinion of the trial judge in passing upon it, in the hearing of a motion to set aside the verdict of a jury, to peculiar respect in an appellate court, in case he has, upon the hearing of such motion, duly considered all the evidence touching the question at issue. Section 9, chapter 131, Code provides that: "In the trial of a case at law in which a writ of error or supersedeas lies to the court of appeals, a party may except to any action or opinion of the court, and tender a bill of exceptions; and if the action or opinion of the court be upon any question involving the evidence or any part thereof, either upon a motion for a new trial or otherwise, the court shall certify all the evidence touching such question, * * * and the whole of the evidence so certified shall be considered by the court of appeals, both upon the application for and hearing of the writ of error or supersedeas." This provision of statute lays down a rule in terms for this Court that all the evidence involved, offered on both sides, shall be considered in ascertaining whether the trial court erred in its ruling. In *Johnston* v. *Burns*, 39

W. Va. 659, syl. point 2, (20 S. E. 686) says:  Under sec-
tion 9, chapter 131, Code, when exception is taken to the
action or opinion of the court upon a question involving evi-
dence upon a motion for a new trial or otherwise, all the
evidence, whether conflicting or not, must be certified, and
this Court must consider all such evidence on both sides,
though conflicting, not rejecting any." And by impli-
cation the same rule applies thereunder to the trial court
in the hearing and consideration of the motion to set aside
the verdict.  While it does not appear from the record
upon what ground the court refused to set aside the ver-
dict, it is asserted by plaintiff, and not denied by de-
fendant, that the reason assigned by the court was that the
evidence of the plaintiff was disregarded on the hearing of
the motion.  Upon consideration of the whole evidence as
it appears in the record, the finding of the jury was plainly
against the decided and clear preponderance of evidence.
In *Johnston* v. *Burns supra* syl. point 5, it is held that "if
upon such evidence, the finding of the jury plainly appears
to be contrary to the evidence, or without sufficient
evidence, or plainly against the decided and clear
preponderance of evidence, it ought to be set aside,
even though the evidence be conflicting." Also *Yeager*
v. *City of Bluefield*, 40 W. Va. 484, (21 S. E 752); *State* v.
*Zeigler*, 40 W. Va. 593, (21 S. E. 763).  Appellant
says: "It would seem that this court would make the order
that the court below should have made, and to give a judg-
ment for the amount the evidence shows the plaintiff was
entitled to, notwithstanding the verdict.  This court can-
not usurp the function of the jury, and weigh the tes-
timony, and ascertain the just compensation of the plain-
tiff when the issues have been submitted to a jury.  The
right of trial by jury is guarantied to every litigant, and,
as this court said in *Johnson* v. *Burns supra*: "We must
accord to the jury the function of judging of the credibili-
ty of evidence, and of drawing inferences and deductions
therefrom."  And the question of compensation to plain-
tiff sued for in this case is to be settled by the verdict of a
jury.  The Court of Appeals always insists that the power
to set aside a verdict when the evidence convicts should be
exercised with great caution, and it is held that a "strong-

er case should be made generally to justify an appellate court in disturbing an order granting a new trial than when one has been refused." *Miller* v. *Insurance Co.*, 12 W. Va. 116; *Reynolds* v. *Tompkins*, 23 W. Va. 229. The judgment is reversed, and the cause remanded for a new trial to be had.

*Reversed.*