479 S.E.2d 602

Robert H. WILHELM, Petitioner
Below, Appellee,

v.

WEST VIRGINIA LOTTERY, Richard E.
Boyle, Jr., Director of the West Virginia
Lottery, James H. Paige, III, Secretary
of the West Virginia Tax and Revenue,
Gaston Caperton, Governor of the State
of West Virginia, and West Virginia Ed-
ucation and State Employee's Grievance
Board, Respondent Below, Appellants.

No. 23056.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 24, 1996.

Decided Nov. 14, 1996.

Darrell V. McGraw, Jr., Attorney General, Kelli D. Talbott, Senior Assistant Attorney General, Charleston, for the Appellants.

No Appearance for the Appellee.

PER CURIAM: [1]

The West Virginia Lottery (hereinafter Lottery), et al.,[2] seeks reversal of an order of the Circuit Court of Kanawha County remanding Robert H. Wilhelm's grievance for wrongful discharge to the West Virginia Education and State Employees Grievance Board (hereinafter Board) for a hearing. On appeal, the Lottery maintains that because Mr. Wilhelm's complaint failed to state a claim upon which relief can be granted, the Board's dismissal of Mr. Wilhelm's grievance was proper. Because Mr. Wilhelm's employment was at-will and the complaint failed to allege a violation of a liberty interest, we reverse the circuit court and reinstate the decision of the Board.

**1.** The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996 and continuing until further order of this Court.

**2.** In his grievance before the West Virginia Education and State Employees Grievance Board, Mr. Wilhelm named the Department of Tax and Revenue/Lottery Commission as the respondent. However, in his appeal to the circuit court of that decision, Mr. Wilhelm named the "West Virginia Lottery, Richard E. Boyle, Jr., Director

## I.

## FACTS AND BACKGROUND

Mr. Wilhelm began working for the Lottery in 1986; in 1989, former Lottery Director E.E. "Butch" Bryan appointed Mr. Wilhelm deputy director of the accounting and administration division. Between 1989 and 1994, the Lottery received substantial publicity through the trials and subsequent convictions of its former director and the Lottery's attorney. However, none of the allegations was directly related to Mr. Wilhelm or his work. In a meeting on January 14, 1994, current Director Richard E. Boyle, Jr., told Mr. Wilhelm that he would be terminated from his employment. A second meeting among Director Boyle, Mr. Wilhelm and Mr. Wilhelm's lawyer was held to discuss the situation. By letter dated January 24, 1994, Director Boyle informed Mr. Wilhelm that his employment would be terminated effective February 8, 1994. In his letter, Director Boyle said that "the reason for this action is my loss of confidence in your ability to effectively [sic] discharge the duties and responsibilities of your position. . . ."

On February 8, 1994, Mr. Wilhelm filed a grievance with the West Virginia Education and State Employees Grievance Board alleging that he was wrongfully terminated from his employment. On March 16, 1994, the Department of Tax and Revenue/Lottery filed a motion to dismiss Mr. Wilhelm's grievance for failure to state a claim for which relief could be granted.[3] After a preliminary

of the West Virginia Lottery, James H. Paige, III, Secretary of the West Virginia Tax and Revenue [sic], Gaston Caperton, Governor of the State of West Virginia, and West Virginia Education and State Employee's [sic] Grievance Board" as the respondents.

**3.** The procedural rules for the Board are set forth in 156 C.S.R. 1 (1996). The Board's rules allow for the dismissal of a grievance when "no claim upon which relief can be granted is stated or a remedy wholly unavailable to the grievant is requested." 156 C.S.R. 1–4.11 (1996). The West Virginia Rules of Civil Procedure set forth a similar procedure for dismissal for "failure to state a claim upon which relief can be granted" for "all trial courts of record in . . . proceedings of a civil nature." See Rules 12(b)(6) and 1, respectively.

hearing, Mr. Wilhelm was permitted to amend his grievance, which he did on April 15, 1994. By order entered on September 30, 1994, the Board dismissed Mr. Wilhelm's grievance finding that he was an at-will employee and had failed to assert that his dismissal contravened some substantial public policy. Mr. Wilhelm appealed the Board's decision to the circuit court.

By order entered February 16, 1995, the Circuit Court of Kanawha County reversed the dismissal of Mr. Wilhelm's grievance and remanded the case to the Board for a hearing. The circuit court noted that because of the "Lottery scandal, any information gleaned by the media about Lottery employees was published and received statewide attention. Thus, the reason given petitioner [Mr. Wilhelm] for his discharge, the 'loss of confidence in petitioner's ability to effectively discharge the duties and responsibilities of [petitioner's] position', reason [sic] was published statewide and carried more of a stigma than if the only person to see the reason was the recipient of the discharge letter." Finding the disclosure "could damage his [Mr. Wilhelm's] standing and associations in the community and infringe petitioner's liberty interest," the circuit court reversed and remanded to the Board for a hearing.

Alleging that the dismissal by the Board was proper, the Lottery appealed to this Court. On appeal, the Lottery argues that Mr. Wilhelm was an at-will employee and that his termination did not violate his liberty interest.

## II.

### DISCUSSION

■ The central issue in this appeal is whether the Lottery's statement concerning a "loss of confidence" in Mr. Wilhelm' abilities involves a liberty interest so as to trigger due process concerns requiring a hearing.

We begin by noting that as a deputy director of the Lottery, Mr. Wilhelm was an at-will employee. W. Va.Code 29–22–8(a)(1) (1985) states, in pertinent part: "The deputy directors appointed shall serve *at the will and pleasure of the director* at an annual salary established by the commission. Deputy directors shall not be eligible for civil service coverage as provided in section four [§ 29–6–4], article six, chapter twenty-nine of this code." (Emphasis added.) The use of the phrase "at the will and pleasure of the director" indicates the intent of the Legislature to give the Lottery Director control over the hiring and firing of deputy directors for the Lottery. In *Williams v. Brown,* 190 W.Va. 202, 437 S.E.2d 775 (1993), we found assistant attorneys general were at-will employees because they were "appointed [to] ... serve at the pleasure of the attorney general" by W. Va.Code 5–3–3 (1961). In Syl. pt. 2 of *Williams v. Brown,* we stated:

> "Where a statute conferring the power to appoint fixes no definite term of office, but provides that the tenure shall be at the pleasure of the appointing body, the implied power to remove such appointee may be exercised at its discretion, and cannot be contracted away so as to bind the appointing body to retain him in such position for a definite, fixed period." Syllabus Point 4, *Barbor v. County Court,* 85 W.Va. 359, 101 S.E. 721 (1920).

Although Mr. Wilhelm, as a deputy director of the Lottery, was an at-will employee, the Lottery Director's ability to discharge him is not unfettered. In *Harless v. First National Bank in Fairmont,* 162 W.Va. 116, 246 S.E.2d 270 (1978), we held that an at-will employee cannot be discharged if such a discharge contravenes some substantial public policy. The Syllabus of *Harless v. First National Bank of Fairmont,* 162 W.Va. 116, 246 S.E.2d 270 (1978), states:

> The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge.

In the case *sub judice,* Mr. Wilhelm argued that his discharge violated his due process right because the reason given sullied his reputation and stigmatized his future em-

ployment opportunities.[4] This argument raises an issue about whether Mr. Wilhelm's discharge affected his "liberty interest," so as to entitle Mr. Wilhelm to a hearing.

■ In *Waite v. Civil Service Commission*, 161 W.Va. 154, 158, 241 S.E.2d 164, 167 (1977), we held that when "liberty" or "property" interests are affected by State action, due process requirements are triggered. Syl. pt. 1 of *Waite v. Civil Service Commission* states: "The Due Process Clause, Article III, Section 10 of the West Virginia Constitution, requires procedural safeguards against State action which affects a liberty or property interest."

In order to determine if procedural safeguards against State action are required, we generally employ a two-step analysis. *Waite*, 161 W.Va. at 159, 241 S.E.2d at 167. "Initially, we determine whether appellant's interest rises to the level of a 'liberty' or 'property' interest." A "liberty" interest is grounded in the Due Process clauses of the U.S. Const. and the W. Va. Const., which prohibits the deprivation of "... life, liberty or property, without due process of law." U.S. Const., Amendment 5, and W. Va. Const., Art. III, Sec. 10.

■ A "liberty" interest is an individual's interest "in being free to move about, live and work at his chosen vocation without the burden of an unjustified label of infamy." *Waite*, 161 W.Va. at 159, 241 S.E.2d at 167, *citing, Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 572, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548, 558 (1972). Syl. pt. 2 of *Waite* states:

The "liberty interest" includes an individual's right to freely move about, live and work at his chosen vocation, without the burden of an unjustified label of infamy. A liberty interest is implicated when the State makes a charge against an individual that might seriously damage his standing and associations in his community or places a stigma or other disability on him that forecloses future employment opportunities.

In *Waite*, 161 W.Va. at 160, 241 S.E.2d at 167–68, we explained that "an accusation or label given the individual by his employer which belittles his worth and dignity as an individual and, *as a consequence, is likely to have severe repercussions outside his work world,* infringes one's liberty interest." (Emphasis added.)

In *Freeman v. Poling,* 175 W.Va. 814, 822, 338 S.E.2d 415, 423 (1985) (replacement of deputy sheriffs by the newly elected sheriff without any charges of wrongdoing does not impair the deputy sheriffs' liberty interests) we held:

Courts are rather uniform in holding that an unexplained termination or discharge from employment does not create a sufficient stigma to invoke a liberty interest protection under *Roth* as the Fourth Circuit Court of Appeals held in *Bunting v. City of Columbia,* 639 F.2d 1090, 1095 (4th Cir.1981): "Certainly, a person who has been fired may be somewhat less attractive to other potential employers, but it would be stretching the concept too far to conclude that a person's liberty interest is impaired merely because he has been discharged. *See Board of Regents v. Roth,* 408 U.S. 564, 575 [92 S.Ct. 2701, 2708, 33 L.Ed.2d 548, 560] (1972)." *See Board of Curators v. Horowitz,* 435 U.S. 78, 83–84, 98 S.Ct. 948, 952, 55 L.Ed.2d 124, 131 (1978).

In this case, the Lottery Director said that Mr. Wilhelm was discharged because of a "loss of confidence in your ability to effectively [sic] discharge the duties and responsibilities of your position." We conclude therefore that this reason does not "reach the level of stigmatization which would foreclose future employment opportunities or seriously damage ... [the individual's] standing and associations in the community." *Waite,* 161 W.Va. at 160, 241 S.E.2d at 168. We find that the circuit court erred in finding that the reason given by the State for discharging Mr. Wilhelm implicated a liberty interest. Based on our conclusion that Mr. Wilhelm's liberty interest was not affected, we find no

**4.** Mr. Wilhelm did not appear in this Court; however, he did appear below and we base his

arguments on the positions he adopted below.

hearing is required and reverse the circuit court.

■ Although the circuit court's reversal requiring a hearing was based on its finding of a liberty interest, we note that the Board and the circuit court rejected Mr. Wilhelm's allegation of discrimination. Mr. Wilhelm argued that certain unidentified Lottery employees were not terminated for "similar offenses." We agree with the circuit court that Mr. Wilhelm's allegation of discrimination fails to state a claim upon which relief can be granted because the unequal treatment, in this case, failed to show a substantial contravention of the public policy against discrimination. The evidence is undisputed that Mr. Wilhelm was not charged with any offense. Also, because the other employees were not identified, there is no way to determine if they and Mr. Wilhelm were similarly situated. Mr. Wilhelm, a white, American male, did not allege any type of class discrimination, such as age, religion, sex or handicap. As an at-will employee, Mr. Wilhelm can be discharged as long as his discharge does not violate a public policy, such as the policy against discrimination. Although the amended complaint described Mr. Wilhelm's different treatment as discrimination, a value laden term, the mere use of the term without identifying the public policy, is insufficient to state a claim for relief.

In *Williams v. Brown*, 190 W.Va. at 208, 437 S.E.2d at 780–81, we refused to impose a duty on the State of good faith and fair dealing with its at-will employees because such a duty "would be contrary to the general principles contained in *Barbor [v. County Court*, 85 W.Va. 359, 101 S.E. 721 (1920) ] and elsewhere that grant the appointing authority an unfettered right to terminate an appointee." Because Mr. Wilhelm did not identify what substantial public policy was violated by his discharge, we refuse to limit the Lottery Director's authority to terminate an at-will appointee.

In this case, the Board dismissed Mr. Wilhelm's grievance because it failed to state a claim upon which relief could be granted. The Board under 156 C.S.R. 1–4.11 (1996) can dismiss a grievance when it fails to state a claim upon which relief can be granted.

4.11. Failure to state a claim—A grievance may be dismissed, in the discretion of the administrative law judge, if no claim upon which relief can be granted is stated or a remedy wholly unavailable to the grievant is requested.

156 C.S.R. 1–4.11 (1996).[5]

Because the Board's dismissal rule is similar to the granting of a Rule 12(b)(6) motion under the West Virginia Rules of Civil Procedure, we apply our traditional standard to determine if the dismissal was proper. This standard was stated in Syl. pt. 2 of *Sticklen v. Kittle*, 168 W.Va. 147, 287 S.E.2d 148 (1981):

"The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Syl., *Flowers v. City of Morgantown*, 166 W.Va. 92, 272 S.E.2d 663 (1980).

In accord Syl. pt. 2, *Garrison v. Herbert J. Thomas Mem. Hosp. Ass'n*, 190 W.Va. 214, 438 S.E.2d 6 (1993).

Because of our policy of favoring the determination of actions on the merit, we generally view motions to dismiss with disfavor, and therefore, construe the complaint in the light most favorable to the plaintiff and consider its allegations as true. *Garrison*, 190 W.Va. at 219, 438 S.E.2d at 11; Syl. pt. 3, *Chapman v. Kane Transfer Co. Inc.*, 160 W.Va. 530, 236 S.E.2d 207 (1977). However, this liberal standard does not relieve a plaintiff or, in

---

**5.** The Board's general rules on motions are found in 156 C.S.R. 1–4.6 (1996), which provides, in pertinent part:

4.6 Motions—An application to an administrative law judge for an order must be by motion, in writing, unless made during a hearing, and must be filed and served upon all parties promptly, as soon as the facts or grounds upon which the motion is based becomes known to the moving party....

4.6.3 All motions are to be accompanied by a concise statement of its basis, both legal and factual. Motions not timely made in the determination of the administrative law judge may be denied on that basis alone.

this case, a grievant of the obligation of presenting a valid claim, that is a claim upon which relief can be granted.

In this case, Mr. Wilhelm failed to state a valid claim because he, as an at-will employee, could be discharged with or without cause by the Lottery Director unless such a discharge violated a substantial public policy. No substantial public policy was violated in this case because no liberty interest was harmed and no impermissible discrimination was alleged.

For these stated reasons, we reverse the decision of the Circuit Court of Kanawha County and reinstate the September 30, 1994 decision of the West Virginia Education and State Employees Grievance Board.

Reversed.

RECHT, J., sitting by temporary assignment.

WORKMAN, J., deeming herself disqualified, did not participate in the decision of the Court.

GAUGHAN, Judge, sitting by temporary assignment, participated in the decision of the Court.